RAMÓN AGUILAR, peticionario y apelante, *v.* EL PUEBLO DE PUERTO RICO, opositor y apelado.

No. 7202.—*Sometido:* Enero 28, 1936. *Resuelto:* Marzo 13, 1936.

*Gelpí & Gelpí,* abogados del apelante; *R. A. Gómez, Fiscal,* abogado de El Pueblo, apelado.

EL JUEZ PRESIDENTE SEÑOR DEL TORO, emitió la opinión del tribunal.

Ésta es una apelación interpuesta en un caso de hábeas corpus.

Encontrándose Ramón Aguilar en prisión por orden del Fiscal del Distrito de Mayagüez para responder del asesinato de José Abraham Torres, se dirigió al Juez Sr. Foote de la corte del distrito, y alegando que se le tenía preso sin motivo, le pidió que, previa la investigación de ley, decretara su libertad.

Ordenó el juez la expedición del auto y en la vista del mismo el fiscal entre otras pruebas presentó la declaración bajo juramento prestada ante él por José Abraham Torres hallándose moribundo. Se opuso el peticionario a su admisión y la corte declaró sin lugar su oposición, anulando finalmente el auto expedido por entender que había causa suficiente para la detención.

No conforme el peticionario, apeló para ante esta Corte Suprema. Sostiene en su alegato que la corte de distrito erró al admitir en evidencia una supuesta declaración in artículo mortis (*dying declaration*), al denegar su moción pidiendo que dicha declaración se eliminara del récord y al resolver que se había demostrado la existencia de causa probable para la detención.

Unida a la otra evidencia aportada por el fiscal, creemos que la declaración en artículo de muerte de que se trata constituye base suficiente para la actuación del fiscal. El moribundo declaró que había tenido un disgusto con el acusado con motivo de cierta cuestión de "una guardarraya de unos terrenos suyos"; que se encontraba en Guanajibo en la finca de la Sucesión Morales en la noche del suceso y sintió unos tiros; que se levantó y al salir al batey, el acusado le disparó

hiriéndolo, y que pudo reconocer al acusado a la luz del *"flashlight"* que llevaba consigo.

Siendo ello así, la única cuestión a estudiar y a resolver y la única que en verdad motiva el recurso es la de si en Puerto Rico son o no admisibles las declaraciones en artículo de muerte.

Admite el apelante que dichas declaraciones han venido admitiéndose en nuestros tribunales desde hace muchos años, pero sostiene que nunca la cuestión que él ahora suscita ha sido debidamente presentada ante esta Corte Suprema. Alega que siendo contraria dicha práctica al precepto constitucional que garantiza al acusado el derecho a confrontarse con los testigos que se presenten en su contra, que no existiendo en nuestros códigos precepto alguno específico que la autorice y que no rigiendo en esta Isla la ley común de Inglaterra, debe decidirse que es ilegal.

No estamos conformes. La circunstancia de no contener nuestras leyes la autorización específica que contienen las de California—de cuyo estado se alega que se tomaron las nuestras—sobre admisión de esa clase de declaraciones, no es decisiva. Es suficiente con que prescriban, como prescribe la de Evidencia en su artículo 35, apartados 1 y 13 que:

"De conformidad con las precedentes disposiciones podrá presentarse en un juicio evidencia de los hechos siguientes:

"1. El hecho exacto en controversia.

"13. Cualesquiera otros hechos de los cuales los hechos en controversia se presumieren o pudieren lógicamente inferirse."

Y decimos que es suficiente porque desde tiempo inmemorial, dentro del sistema que en conjunto se implantó en Puerto Rico tanto a virtud de la aprobación de los nuevos Códigos Penal y de Enjuiciamiento Criminal como de la nueva Ley de Evidencia, se ha venido resolviendo que las declaraciones in artículo mortis son admisibles en casos de asesinato u homicidio como prueba directa del hecho de la muerte y de la forma en que ésta se produjo, o sea del hecho

exacto en controversia, habiéndose seguido dicha práctica en esta Isla desde hace más de treinta años, a las claras, con la aprobación de esta corte y el conocimiento de la Legislatura Insular.

En el caso de *El Pueblo* v. *Díaz,* 35 D.P.R. 582, 587, dijo esta corte por medio de su Juez Asociado Sr. Aldrey:

"No funda este error el apelante en que no se hubiera demostrado, como se demostró, que cuando el interfecto José Antonio Rodríguez hizo las manifestaciones que le· atribuyen los testigos no supiera que estaba en inminente peligro de próxima muerte sino en que tal clase de prueba no es admisible, pero la admisibilidad de esa clase de declaraciones en procesos criminales ha sido declarada por este tribunal en el caso de El Pueblo v. Morales, alias Yare Yare, 14 D.P.R. 234, en el de El Pueblo v. Barrios, 23 D.P.R. 831, y en otros; y la razón de tal admisibilidad se encuentra claramente explicada en Wharton's Criminal Evidence, vol. 1, pág. 540."

Y lo dicho en el de *El Pueblo* v. *Barrios,* por medio de su Juez Asociado Sr. Wolf, fué:

"El segundo señalamiento de error se refiere a la admisión en evidencia de la declaración hecha por una persona en artículo de muerte *(dying declaration).* El apelante parece fundarse principalmente en su alegato, en el hecho de que existían otras pruebas tendentes a acreditar las mismas cuestiones referidas en dicha declaración. La corte tiene cierta discreción en la admisión de prueba acumulativa, pero una declaración prestada por un moribundo *(dying declaration)* jamás debe ser rechazada porque exista simplemente otra prueba directa. La necesidad de estas declaraciones a la cual hacen referencia las decisiones, se relaciona con el hecho de que la declaración de la persona en particular, del moribundo, no puede obtenerse de otro modo y no depende de si otros testigos pueden prestar igual declaración o una parte de la misma. People v. Fong Ah Sing, 64 Cal. 253, 21 Pac. 233; 21 Cyc. 975. La declaración de una persona moribunda *(dying declaration)* forma parte del hecho consumado *res gestae* en cuanto a la admisión de pruebas y se rige por principios semejantes." *El Pueblo* v. *Barrios,* 23 D.P.R. 831, 833.

En cuanto a que la práctica es contraria al precepto constitucional que garantiza al acusado su derecho a confrontarse con los testigos que puedan presentarse en su

contra, bastará citar lo resuelto por la Corte Suprema de los Estados Unidos en el caso de *Mattox* v. *United States,* 156 U. S. 237, 242. Es así:

"El objeto principal del precepto constitucional en cuestión fué impedir que deposiciones o declaraciones juradas (*affidavits*) *ex parte,* tales como las que ocasionalmente se admitían en casos civiles, se usaran contra el acusado en vez del interrogatorio personal y contrainterrogatorio de los testigos, en los cuales el acusado tiene la oportunidad, no sólo de poner a prueba la memoria y de penetrar en la conciencia del testigo, sino de obligarle a estar frente a frente ante el jurado a fin de que pueda verle y por su conducta en la silla de testigos y la forma o manera en que presta su testimonio juzgar si merece que se le crea o no. Sin duda hay razón para aseverar que el acusado nunca debe perder el beneficio de estas garantías aún con la muerte del testigo; y que, de permitirse la lectura de notas de su testimonio, se le privaría del beneficio de tal presencia personal del testigo ante el jurado que la ley ha provisto para su protección. Sin embargo, reglas generales de derecho de esta clase, no importa cuán beneficiosas sean sus efectos ni lo valiosas que resulten para el acusado, deben ocasionalmente ceder a consideraciones de política pública y a las necesidades del caso. El decir que una vez convicto mediante el testimonio de cierto testigo, el criminal debe escapar sencillamente porque la muerte ha sellado los labios de ese testigo, equivaldría a llevar la protección constitucional a su favor a un extremo injustificado. La ley en su sabiduría declara que los derechos del público no serán totalmente sacrificados para preservar al acusado un beneficio incidental.

"Venimos obligados a interpretar la Constitución a la luz de la ley según existía en la época en que se adoptó; no procurando alcanzar nuevas garantías de los derechos del ciudadano, sino asegurando a cada individuo aquellos derechos que ya tenía como súbdito inglés—tales como los que sus progenitores heredaron y defendieron desde los días de la Magna Carta. Muchos de sus preceptos que participan de la naturaleza de una Declaración de Derechos, están sujetos a excepciones, reconocidas éstas mucho antes de adoptarse la Constitución y que no interfieren en absoluto con su espíritu. La intención evidente fué que tales excepciones se respetaran. La adhesión técnica a la letra de un precepto constitucional puede ocasionalmente llevarse más allá de lo necesario para la justa protección del acusado y más allá de lo que la seguridad del público justificaría. Por ejemplo, nada habría más directamente opuesto a la

letra del precepto de referencia, que la admisión de declaraciones in artículo mortis (*dying declarations*). Se hacen raras veces en presencia del acusado; son hechas sin oportunidad alguna de interrogatorio o contrainterrogatorio; al testigo tampoco se le trae cara a cara con el jurado; sin embargo, desde tiempo inmemorial se han considerado como testimonio admisible y nadie tendría la osadía de poner ahora en tela de juicio su admisibilidad. Se admiten, no de conformidad con ninguna regla general relativa a la admisión de testimonio, sino como una excepción a tales reglas simplemente debido a las necesidades del caso y para evitar un manifiesto fracaso de la justicia. Como se dijo por el Juez Presidente cuando el caso de autos estuvo por vez primera ante nos a virtud de un recurso de error (146 U.S. 140, 152), el sentimiento de la muerte próxima se presume que aleja toda tentación a la mentira y que obliga a una adhesión tan estricta a la verdad como lo haría la obligación de un juramento. Si tales declaraciones se admiten por haberse hecho por una persona entonces muerta, bajo circunstancias que dan a sus manifestaciones el mismo peso que si se hubieran hecho bajo juramento, existe igual si no mayor razón para admitir testimonio de manifestaciones suyas hechas bajo juramento.''

*Debe declararse sin lugar el recurso y confirmarse la resolución apelada.*

El Juez Asociado Señor Wolf está conforme con el resultado.*

El Juez Asociado Señor Córdova Dávila no intervino.